Ms. Vinci, when you're ready. Good morning, your honors. May it please the court, my name is Gabrielle Vinci and I represent Tom Rossley in a lawsuit for retaliation and breach of contract against Drake University and the Board of Trustees of Drake University, stemming from Mr. Rossley's forced removal from the Board of Trustees following his complaints that Drake had committed numerous violations of Title IX and the ADA when investigating and adjudicating a complaint made against his son, then a Drake student. The district court granted defendants judgment on the pleadings and summary judgment. We challenge both decisions today and both decisions are subject to de novo review with all facts alleged to be deemed true and all inferences resolved in my client's favor. The case presents three primary issues. Initially the district court found that membership on the Board of Trustees did not constitute an educational activity or did not confer an educational benefit and therefore Mr. Rossley did not have standing to bring a Title IX retaliation claim. The district court further found that Mr. Rossley had not sufficiently raised an issue related to pretext to support his ADA retaliation claim and had not sufficiently demonstrated the existence of a contract between the parties to support his breach of contract claim. We submit that the findings and the holdings of the lower court were erroneous and they should be overturned and in this case remanded. Did the court make findings? Because obviously you can't make a finding of fact in either a summary judgment motion or in a 12B6 motion because you accept the facts either as pled or the facts as undisputed. So there can't be an actual finding. I would submit, Your Honor, that particularly in the summary judgment context the court did make a significant finding of fact and if I may address that now, Your Honor. So with respect to the issue of pretext on the ADA retaliation claim, the court presented the facts underlying its holding as asserted by Drake, not as asserted by all parties involved or the actual statements of fact presented by both parties. The court characterized Mr. Rossley and some of his actions as angry, which we submit was a improper character assessment for the court to make on a summary judgment motion. It also determines that the correspondence at issue, meaning the correspondence containing the complaints that Mr. Rossley made, were not correspondence containing complaints but were simply communications advocating for a change in the outcome of his son's disciplinary proceedings. In order to do that, the court, the only conceivable way the court could do that would be to dismiss record evidence, deposition testimony from board and Drake leadership members that they knew and acknowledged and understood that those communications were not solely communications to change the outcome of Mr. Rossley's son's case. They also were communications raising complaints that Drake had violated Title IX and violated the ADA. So in order to hold and to find in its opinion that those were not complaints of violations of federal law, the court would either have to disregard the contradicting evidence or consider the contradicting evidence and determine whether it was relevant or credible, which is not for the court to do on summary judgment. The jury should have been able to do that. Would there be an exception if the district court was to look at that and say that the only reasonable inference that a jury could draw based on what's in the record is supported by his conclusion? I would argue, Your Honor, that it's not because that would not have been the only reasonable inference to draw. Right. So what you're saying is that these are issues that were specifically factually disputed and they were not the type of things from which just an indisputable inference might be drawn. Correct, Your Honor. If I may just continue with our argument regarding the ADA retaliation claim. You may. So the court, in finding that Mr. Rossley had not shown or demonstrated sufficient pretext, relied upon the determination by Drake, the business justification proffered by Drake, that Mr. Rossley had an incurable conflict of interest. And as some background, as I believe it is relevant here, that conflict of interest was seemingly that Mr. Rossley's son had contemplated and notified Drake of potential litigation and Mr. Rossley would have been placed in a position where he would kind of see each side's hand. And as an acting member of the board, he would be privy to conversations with Drake regarding the litigation, presumably. And as his son's father, he would be privy to litigation strategy for his son. The court found that Mr. Rossley did not raise a question of fact as to whether or not this conflict of interest was a mere pretext. We respectfully submit that the record does show that there was the potential for pretext. It is necessary to note that Mr. Rossley's burden was not to disprove the alleged justification for his removal from the board. It was only to raise a question as to whether his complaints were a likely motivation for the board's act of removing him. And that standard comes from Lors v. Dean out of the 8th Circuit in 2014. It's 746 F3D 857. Here the timeline supported that the conflict of interest was not the only factor motivating the board's decision. And a jury could have found that Mr. Rossley's complaints were a likely factor, a likely motivating factor in his removal. Mr. Rossley was removed from the board in July of 2016. The alleged conflict of interest arose and was known to defendants as they testified in February of 2016. It was not an issue then. In March of 2016, when Mr. Rossley disclosed voluntarily that this conflict, this exact conflict of interest was possible, he was told it was not important, it was not of interest to them at that time. It only became a problem in April of 2016 when Mr. Rossley sent the first email complaining that Drake, through its process, had violated Title IX and violated the ADA. At that point, and only at that point, did Drake step in to take immediate action, not to resolve a potential conflict of interest, but to tell Mr. Rossley and to tell those he had reached out to, to stop talking about those issues. Counsel, were there any communications by Mr. Rossley in between those two times regarding the situation? There were not. There is no evidence of that other than communications, personal communications. There is evidence that Mr. Rossley's son and the fact that a trustee's son had disciplinary proceedings going on at the time of his membership on the board was discussed amongst the board leadership and the university leadership, meaning the president of the university. So we would submit that that timeline, the fact that it only became an issue after he complained that violations had been made, find in favor that a jury could find a likely motivation for his removal, would have been his complaints of violations of the ADA and Title IX. I now would like to turn to the issue of standing found by the court. The lower court found that the membership on the board of trustees was not something that conferred any educational benefit and was not an educational activity so as to trigger Title IX and therefore Mr. Rossley did not have standing. It is a separate legal entity, is it not? It is, Your Honor, but I would refer the court to Doe versus Mercy Catholic Medical Center, an instructive decision out of the Third Circuit from 2017. It is 850 F3D 545 and is in fact cited by both parties in their briefings. The Third Circuit held that to be an educational program or activity, it must maintain or hold itself out as educational and be for the purpose of facilitating the earning of a degree or diploma. Here, the record is clear that the board of trustees exists solely to operate, maintain, and regulate Drake University, an uncontested educational institution. In doing so, it is responsible for the employment of Drake staff, for the admissions of Drake students, for the allocation of funds, presumably including funds coming from the federal government to Drake University, and is also responsible for establishing the degree-earning programs at Drake. Not only do they create and establish the degree-earning programs, the trustees themselves determine at the end of each academic year what students are graduating. If they've met the criteria and they actually hand and confer the diplomas to the students themselves. Does his status as a volunteer make any difference? I would argue not, your honor. Although he is a volunteer, as found by the court previously, he still has obligations as a volunteer, which goes, I believe, to our breach of contract claim. He's volunteered and he has entered to serve as a board of trustee. He still has to abide by the bylaws, abide by his responsibilities as set out in the bylaws, abide by every single Drake policy, including the non-retaliation policy at Drake, which specifically states on its face that it applies to trustees. So to say that because he is a volunteer, he just does not have standing, it doesn't negate the fact that he is a member of the regulating body of a university. To find, as the district court did, would be to essentially limit Title IX retaliation protections to just students and employees who are actively engaged in the educational programs on a personal level. A premise which has been rejected by at least one court, the Middle District Court of Pennsylvania, as being contrary to the purpose and clear language of Title IX. It would also allow universities to purge controlling members of their entity for doing, essentially blowing the whistle when the universities engage in unlawful conduct, and which would set a very, very dangerous precedent. And unless there are no further questions, I'd like to reserve the remainder of my time for reply. You may. Ms. Haas, when you're ready. May it please the court. I'm Frances Haas, and I am counsel for Drake University and its board of trustees. And I will start where Ms. Vinci started, with the ADA retaliation claim. My clients believe that the district court's decision was correct and should be affirmed. One important item to note in regard to questions about factual issues and the findings of fact, is that Mr. Rossley conceded that his advocacy for his son was indeed a conflict. There's no question there was a conflict here. And the testimony from the board members was that this conflict was a problem, and he was removed because of that conflict. I think the question, the question that the district court addressed was whether Mr. Rossley had generated an issue of fact about whether there was retaliation, whether retaliation motivated his removal from the board as opposed to his advocacy for his son. And he simply didn't have that evidence here. One argument that was discussed here today was a suggestion that the timing of his removal is evidence of pretext. It's a bit confusing. One argument is that Drake University should have acted sooner and didn't, or that Drake University acted too quickly in response to his son's advocacy. The question of temporal proximity, which is what that issue raises, isn't enough on its own to generate evidence of retaliatory pretext. There needs to be more, and the plaintiff simply did not come forward with that in this case. The other evidence that the plaintiff had marshaled in support of the argument that retaliation existed fails for similar reasons. One suggestion was that the board could have taken different steps to address the conflict, which is certainly true. However, the board simply exercised its business judgment. It tried to work things out with Mr. Rossley, and those efforts didn't pan out. And the board took steps to remove him once it became clear that Mr. Rossley was unwilling to leave on his own. And whether the board could have moved faster really isn't relevant, because it's a business judgment that the board exercised. And I'll turn now, unless the court has questions about the retaliation argument, to the question of statutory standing under Title IX. Oh, there is some discussion earlier about the board being a separate entity from Drake University, which is an important point, because the board itself does not receive federal funding. The board itself is exempt from Title IX, and the board was dismissed as a defendant as to the Title IX claim in an order that was not appealed by the plaintiff in this case. And so that's important because Mr. Rossley contends that he was denied the benefit of being on the board, being a member of the board. That is not an education program or activity. And it's clear, the statute is clear to have a remedy under Title IX. You must be deprived from or excluded from participation in or subject to discrimination under any education program or activity receiving federal financial assistance. The board does run an educational institution, doesn't it? It does. I think one way to think about this is, you know, what is an education program or activity? Is what the board does on its own an education program or activity? And if we look to the legislative intent on what that means, I think it provides some clarity. So, for example, and this legislative intent was quoted in the Bell case before the Supreme Court. The sponsor of the bill testified that the legislation, the Title IX legislation addressed, quote, three basically different types of discrimination here. We are dealing with discrimination in admission to an institution, discrimination of available services or studies within an institution once students are admitted, and discrimination in employment within an institution as a faculty member or otherwise. And Mr. Rossley wasn't admitted as a student. He was not an employee. He was not seeking access to educational studies. He's not seeking access to educational programs. In light of that statutory intent and the regulations that were promulgated after that, which provide not an exhaustive but a pretty clear set of examples of what educational activity is, Mr. Rossley simply hadn't pled that he participated or was denied the benefit of an education program or activity. The board certainly engaged in education, excuse me, engaged in programs or activities, but they were not education programs or activities as defined by the statute. Is that really true? I mean, if you look at it, they established the argument made by Rossley is that the governing body established the existence of academic programs, that they established the requirements for graduation, that they conferred degrees, that the signature of the president of the board appears on the diploma, all of which seems to be kind of intimately tied with the sort of the educational aspect of Drake University, although there is a separate legal entity that's receiving funds. And they're arguing that that distinction as to who receives funds is not significant for the board members, that the board member is much more akin to being an employee of the university than they are being an independent actor for a separate agency. So that's their argument. Why are they wrong? Well, they're wrong because the statute requires that the education program or activity isn't setting policy, it's receiving the education. And there's a difference. And the case law has indicated that's the case. The Rubidoux case from the Eighth Circuit, you know, I discussed an education program that was available to a prison and determined that part of what the prison was doing, the vocational program, wasn't an education program, but a separate program, and I don't remember the name of it, that had educational components to it, but it was. And we would argue that that is helpful for understanding why the board's decisions about setting policy isn't the same thing as Mr. Rossley participating or attempting to participate in an education program or activity. Another way to think about it is, what is the injury under a Title IX claim? In the Title IX context, an injury is the deprivation of access to the educational opportunities or benefits provided by the school. Mr. Rossley has not pled that he was denied educational opportunities or benefits. Had he applied and been rejected from school or, you know, asked to leave a class that he was enrolled in and made those allegations in the complaint, we would not be able to make the argument that we're making. His membership on the board simply doesn't meet the statutory criteria. And unless the court has other questions, I will cede the rest of my time, and we would ask the court to affirm the district court's rulings. We have no further questions. Thank you very much for your time. Ms. Finchie, you have about three minutes. May it please the court, I just want to respond to some points raised by Ms. Haas and her opposition. With respect to the standing issue and going back to your Honor's question about the board and Drake being two separate entities, I do believe that it is important to note that the lower court had already made a statement in the past and this part of the decision is not up for appeal by either party, that Drake University could be held liable for the removal of Mr. Rossley as a board member on the board of trustees, that a jury could find that Drake, through its president and its president's actions, could be held liable together with the board to the actions that were taken against Mr. Rossley. With respect to the temporal proximity argument that Ms. Haas raised, the issue isn't necessarily that we're arguing actions should have been taken sooner or actions should have been taken later. It goes to what a jury can find the motivation for the action would be. If the actual motivation was, and the only motivation was, to remove Mr. Rossley from the board because of conflict of interest, that conflict was there from February of 2016 for five months before he was actually removed. The only impetus for them to take any actions to alleviate this conflict happened the day within hours of him raising a complaint that Drake had violated Title IX and the ADA. Within hours, the board leadership and the Drake president conferred amongst each other, sent a responsive email to all the recipients of that complaint saying not to discuss the issues that had been raised. Days later, Mr. Rossley was confronted in person to stop discussing the issues that he raised in his correspondence. That is the impetus for the board's action. The argument advanced is that temporal proximity is not enough alone. And, you know, we've kind of said that and we've kind of not said that, but usually there's a whole line of cases where if all you've got is temporal proximity, it's hard to get by. But in this case, what you're saying is that there was the warning and there was the comments and the conversation before, and so it's not mere temporal proximity. In this case, it's proximity plus, right? Correct, Your Honor. It is not merely that he made a complaint and then three months later, he was removed from the board. In between that time, and again, only after he raised his complaints, he was physically confronted. He was confronted in emails. He was made an offer, as Ms. Haas termed it, to work it out with the board. That offer was one which was, and I apologize, Your Honors, my time is out. May I just quickly finish this point? The offer was one which was not contemplated by the bylaws of the board and as testified by the board's leadership, was not a guarantee to allow Mr. Rossley to continue to work on the board. And when pressed for a reason why more options weren't explored, the testimony was, well, there was no other ability to do any other options under the bylaws, despite the fact that their option was not under the bylaws. This is more than just he made a complaint and then he was removed. There were a series of steps which are outlined in detail in our briefing between that time, which makes this more than just an issue of temporal proximity. All right, thank you. We'll take the matter at an advisement.